**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alma Casas, | No. CV-16-08082-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Alma Casas's appeal from the Social Security Commissioner's (the "Commissioner's") denial of her request for expedited reinstatement of disability insurance benefits under Title II of the Social Security Act. (Tr. 24–40). Plaintiff argues that the administrative law judge (the "ALJ") erred by: (1) applying the wrong legal framework; (2) presuming Plaintiff engaged in substantial gainful activity ("SGA"); (3) finding Plaintiff's impairments had medically improved; (4) inappropriately weighing medical testimony; (5) inappropriately weighing Plaintiff's credibility; and (6) violating Plaintiff's due process rights. (*See* Docs. 16; 22). The Court now rules on Plaintiff's appeal.[1]

---

[1] The Court notes that both Plaintiff's opening brief and reply brief fail to comply with the Rules of Practice of the United States District Court for the District of Arizona ("LRCiv") 16.1(d) (2017). LRCiv 16.1(d) states that "opening and answering briefs may not exceed twenty-five (25) pages, including any statement of the facts, with the reply brief limited to eleven (11) pages." The substantive content of Plaintiff's opening brief encompasses 27 pages, (Doc. 16 at 4–30), and the substantive content of Plaintiff's reply brief encompasses 12 pages, (Doc. 22 at 1–12). The Court reminds Plaintiff that local rules have the force of law and are "binding upon the parties and upon the district court." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

# I.    BACKGROUND

## A.    Procedural Background

Plaintiff filed an application for Period of Disability and Disability Insurance Benefits on September 11, 2002, alleging an inability to work since August 19, 2002. (Tr. 262). In October 2003, ALJ Gerald R. Cole ("ALJ Cole") determined Plaintiff was disabled due to a gunshot wound to her right femur, resulting in a fracture, vascular injury, and pain. (Tr. 264–65).

At some point during or before 2011, the Social Security Administration ("SSA") terminated Plaintiff's disability benefits. (Doc. 16 at 7). On November 3, 2011, Plaintiff requested expedited reinstatement of her benefits. (Tr. 272). In 2012, the SSA conducted a continuing disability review and determined that Plaintiff's disability had ceased on November 14, 2011. (Tr. 27, 267, 271). Specifically, the SSA concluded that "current medical evidence shows that [Plaintiff's] leg has healed" and "there has been medical improvement when comparing the severity of [Plaintiff's] impairment at the time of the most recent favorable decision to the severity of [Plaintiff's] impairment now." (Tr. 271). On July 9, 2012, the SSA denied Plaintiff's request for reinstatement of her benefits. (Tr. 279). Plaintiff's request for reconsideration, (Tr. 282), was denied, and Plaintiff requested a hearing by an ALJ, stating that she was "entitled to ongoing disability benefits." (Tr. 283).

On May 2, 2014, five days before Plaintiff's scheduled hearing before the ALJ, Plaintiff's former counsel withdrew from her case. (Tr. 298). At the hearing, Plaintiff appeared without representation of counsel. (Tr. 609, 612–13). The ALJ advised Plaintiff that she would grant a postponement if Plaintiff wanted to retain counsel. (Tr. 612). When Plaintiff voiced her trepidation in waiving her right to counsel, the ALJ told her, "[I]f you're unsure, take the time to find somebody." (Tr. 613). Nevertheless, Plaintiff waived her right to counsel. (Tr. 613). The ALJ issued an unfavorable decision, (Tr. 24),

---

Accordingly, the Court will strike pages 4–5 from Plaintiff's opening brief and page 12 from Plaintiff's reply brief.

and the Appeals Council denied Plaintiff's request for review, (Tr. 5). This timely request for judicial review followed.

**B.  Continuing Disability Review**

In order to determine whether a claimant's disability is continuing or has ceased, and, therefore, whether the claimant is still entitled to disability benefits, ALJs are required to follow an eight-step process. *See* 20 C.F.R. § 404.1594(f).

At step one, the ALJ determines whether the claimant is engaged in SGA. *Id.* § 404.1594(f)(1). SGA is defined as work activity that is both substantial and gainful. *Id.* § 404.1572. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *Id.* § 404.1572(b). If the claimant has engaged in SGA, the claimant's disability is deemed to have ceased and benefits are terminated. *Id.* § 404.1594(f)(1). If the claimant is not engaging in SGA, the analysis proceeds to step two. *Id.*

At step two, the ALJ analyzes whether the claimant's impairment meets or equals the impairments set out in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1594(f)(2). If a Listing is met, the claimant continues to be disabled, and the evaluation stops. *Id.* If not, the analysis proceeds to step three. *Id.*

At step three, the ALJ evaluates whether medical improvement has occurred since the original determination of disability. *Id.* § 404.1594(f)(3). If a medical improvement resulted in a decrease in the medical severity of the claimant's impairments, the analysis proceeds to the next step. If no medical improvement occurred, the analysis skips to step five. *Id.*

At step four, the ALJ determines whether the medical improvement is related to the claimant's ability to work. *Id.* § 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. *Id.* If the improvement is related, the analysis skips to step six. *Id.* However, if the improvement is not related, the analysis proceeds to step five. *Id.*

Step five applies in one of the follow situations: (1) there has been no medical improvement; or (2) the improvement is unrelated to the claimant's ability to work. *Id.* § 404.1594(f)(3)–(4). At step five, the ALJ analyzes whether any exception to medical improvement exists. *Id.* § 404.1594(f)(5). If no exception applies to the claimant, the ALJ must still find the claimant to be disabled. *Id.* If the first group of exceptions applies to the claimant, *see id.* § 404.1594(d), the analysis advances to step six, *id.* If the second group of exceptions applies to the claimant, *see id.* § 404.1594(e), the ALJ will find that the claimant's disability has ended, *id.* § 404.1594(f)(5).

At step six, the ALJ evaluates whether the claimant's impairments are sufficiently severe to limit her physical or mental abilities to do basic work activities. *Id.* § 404.1594(f)(6). If the impairments are not sufficiently severe, the claimant is no longer disabled. *Id.* Otherwise, the analysis proceeds to step seven. *Id.*

At step seven, the ALJ assesses the claimant's current residual functioning capacity ("RFC") to determine whether she can perform past related work. *Id.* § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, the claimant is no longer disabled. *Id.* If not, the analysis proceeds to step eight. *Id.*

Finally, at step eight, the ALJ determines whether the claimant can perform any other SGA. *Id.* § 404.1594(f)(8). If so, the claimant is no longer disabled. *Id.* If not, the claimant's disability continues. *Id.*

C.     **Summary of the ALJ's Decision**

The ALJ stated that the issue before her was whether Plaintiff was entitled to expedited reinstatement of benefits. (Tr. 28). The ALJ set forth the applicable test for expedited reinstatement of benefits under 20 C.F.R. §§ 404.1592b & 404.1592c, and she elaborated that one of the steps for reinstatement required a continuing disability review. (Tr. 28–29).

The ALJ began her findings by determining that the most recent favorable decision finding Plaintiff disabled—the comparison point decision ("CPD")—was October 3, 2003. (Tr. 29). The ALJ also determined that at the time of the CPD,

Plaintiff's medically determinable impairments consisted of a right lower extremity gunshot wound and fracture. (Tr. 29). The ALJ then proceeded through the sequential analysis for continuing disability review. (Tr. 29–39).

At step one, the ALJ found that the claimant did not engage in SGA through November 14, 2011, the date the ALJ determined Plaintiff's disability ended. (Tr. 29). At step two, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments listed in the regulations. (Tr. 31). At step three, the ALJ found Plaintiff experienced medical improvement since November 14, 2011; and, at step four, she noted that the improvement was related to Plaintiff's ability to work—rendering step five inapplicable. (Tr. 32).

At step six, the ALJ found that Plaintiff's impairments of a right lower extremity gunshot wound and fracture were severe impairments that cause more than minimal functional impairments. (Tr. 29). The ALJ also found at step six that Plaintiff's additional complaints of high cholesterol, acid reflux disease/gastroesophageal reflux disease, vitamin D deficiency, diabetes, headaches, irritable bowel syndrome, colitis, neuropathy, fibromyalgia, asthma, chronic obstructive pulmonary disease, carpal tunnel syndrome, and depression did not constitute severe medically determinable impairments because they presented only transient and mild limitations or were well controlled with treatment. (Tr. 29–31).

At step seven, the ALJ found that, as of November 14, 2011, Plaintiff had the RFC to perform light work activity. (Tr. 32). The additional limitations found by the ALJ were that Plaintiff must avoid concentrated exposure to dangerous machinery with moving and mechanical parts and unprotected high and exposed heights. (Tr. 32). In carrying out the remainder of step seven, the ALJ found Plaintiff was capable of performing her past relevant work as a surgical attendant and hotel housekeeper; thus, the ALJ did not proceed to step eight. (Tr. 39). Based on these findings, the ALJ concluded that Plaintiff's disability ended on November 14, 2011, and, consequently, Plaintiff was not entitled to reinstatement of benefits. (Tr. 39).

## II.     LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own

judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

## III. ANALYSIS

Plaintiff makes six broad arguments for why the Court should either reverse the ALJ's decision or remand the case for a new administrative hearing. Specifically, Plaintiff asserts that the ALJ committed the following errors: (1) applying an erroneous legal framework on review, (Doc. 16 at 8–13); (2) presuming Plaintiff engaged in SGA, (Docs. 16 at 12–15; 22 at 1–2); (3) finding Plaintiff experienced medical improvement, (Doc. 16 at 15–20); (4) inappropriately weighing medical opinion evidence, (Docs. 16 at 20–24; 22 at 4–9); (5) finding Plaintiff was not entirely credible, (Docs. 16 at 26–28; 22 at 3); and (6) violating Plaintiff's due process rights during the hearing, (Docs. 16 at 24–26; 22 at 9–11). The Court will now address each argument in turn.

### A. Applicable Legal Framework

Plaintiff requested a hearing before the ALJ, arguing she was "entitled to ongoing [d]isability benefits." (Tr. 283). The ALJ applied the review standard set forth in 20 C.F.R. §§ 404.1592b & 404.1592c, which includes an analysis of whether Plaintiff is still disabled under 20 C.F.R. § 404.1594. (Tr. 28–29). Plaintiff argues that the ALJ erred in two respects: (1) failing to apply the standard set forth in 42 U.S.C. § 423(f) for reviewing a decision to terminate disability benefits; and (2) presuming Plaintiff was not disabled. (Doc. 16 at 8–13).

Plaintiff's first argument, that the ALJ should have applied the 42 U.S.C. § 423(f) standard of review, is contradicted by record. Section 423(f) applies when reviewing whether to terminate a claimant's entitlement to disability benefits. 42 U.S.C. § 423(f). However, Plaintiff requested review of the SSA's decision denying *reinstatement* of benefits. (*See* Tr. 279). Thus, the ALJ was correct to apply the standard set forth in 20 C.F.R. §§ 404.1592b & 404.1592c.

Plaintiff next argues that, by using the expedited reinstatement review standard

instead of the continuing disability review standard, the ALJ erred by presuming Plaintiff was not disabled. (Doc. 16 at 9–13). Plaintiff premises this argument on the assertion that Plaintiff "appealed both the continuing disability review process and expedited reinstatement denial." (Doc. 16 at 9). The Court cannot find—and Plaintiff fails to cite— anywhere in the record that states the bases for Plaintiff's hearing request in such clear terms. Plaintiff's request for a hearing simply states that she disagreed with the SSA determination because she was "entitled to ongoing [d]isability benefits." (Tr. 283). This is the same argument Plaintiff used in requesting reconsideration of the SSA's denial of reinstatement of Plaintiff's benefits. (Tr. 282).

Even if Plaintiff properly appealed the SSA's continuing disability review determination, the ALJ applied the continuing disability review standard in her decision. (Tr. 29–39). In applying this standard, the ALJ relied on objective evidence in the record before determining medical improvement. (Tr. 29–39). Thus, in reviewing whether Plaintiff's disability was ongoing, the ALJ appeared to presume Plaintiff was still disabled. (Tr. 29–31). Plaintiff fails to state how the ALJ's analysis was erroneous or even how such an erroneous analysis constituted harmful error. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). Because Plaintiff neglected to specify where exactly in the ALJ's opinion the ALJ presumed non-disability—or what harm arose from such presumption—Plaintiff cannot establish that this case should be remanded for further proceedings on this basis.

### B.     Presumption of SGA

Plaintiff next argues that the ALJ committed harmful error by presuming Plaintiff engaged in SGA. (*See* Docs. 16 at 12–14; 22 at 1–2). In addition, Plaintiff somewhat relatedly argues that the ALJ erred by considering Plaintiff's work activity despite such work activity failing to amount to SGA. (Doc. 22 at 2–3). However, Plaintiff bases her arguments on an incorrect reading of the ALJ's decision.

The ALJ found that Plaintiff did not engage in SGA prior to the termination of her

disability benefits in November 2011. (Tr. 29). The ALJ also found that Plaintiff worked at SGA levels between 2008 and 2012, (Tr. 32), worked close to SGA levels in 2012, (Tr. 29), and worked over the SGA level in 2013, (Tr. 29, 32). Plaintiff argues that such findings are inconsistent as "the ALJ both found Plaintiff had and had not engaged in SGA prior to the termination of her disability benefits." (Doc. 22 at 3). However, the Court does not find the ALJ's decision to be inconsistent. The ALJ found that, between 2008 and 2012, Plaintiff worked at levels that, had Plaintiff sustained such levels throughout the year, she would have reached SGA levels for each of the years. (Tr. 29, 32). Although the Court admits the ALJ's decision with regard to this point lacked ideal clarity, it is not contradictory. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." (quotation marks omitted)).

Nevertheless, even if the ALJ contradicted her findings on SGA, the error is harmless. The ALJ based her decision to deny expedited reinstatement of Plaintiff's benefits on Plaintiff's medical improvement—not a finding of SGA. (Tr. 32); (*see also* Doc. 22 at 2 ("Plaintiff does not dispute Plaintiff requested expedited reinstatement of benefits, only that the ALJ did not *also* consider Plaintiff's appeal of the termination of her disability benefits on the grounds she was *not* engaging in SGA.")). Although Plaintiff states—without citation—that the "ALJ found medical improvement on the basis that Plaintiff was engaging in SGA," (Doc. 22 at 3), the Court is unable to locate any such finding. Instead, it appears that Plaintiff is actually arguing that the ALJ should not have examined any of Plaintiff's work activity in making credibility determinations. (*See* Doc. 22 at 3–4 (noting that the ALJ cited "Plaintiff's 'ongoing work activity'")). Considering select work activity is not equivalent to making a determination that Plaintiff engaged in SGA. Thus, even if the ALJ contradicted her findings on SGA, such findings were immaterial to the ALJ's decision on medical improvement and, thus, were harmless error. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)

(noting an error may be harmless if it is "inconsequential to the ultimate nondisability determination").

To the extent Plaintiff is actually arguing that the ALJ should not have considered any of Plaintiff's work activity because such work activity did not amount to SGA, (Doc. 22 at 2–3), this argument also fails. The ALJ cited to specific aspects of Plaintiff's work activity—such as Plaintiff's ability to carry an infant while working as a babysitter, (Tr. 34)—in making various credibility determinations and assessing weight to various medical opinions. (*See* Tr. 33–39). Plaintiff cites to *Webb v. Barnhart*, in which the Ninth Circuit Court of Appeals (the "Ninth Circuit") held it was error for the ALJ to base a credibility determination on the claimant's pursuit of employment. 433 F.3d 683, 688 (9th Cir. 2005). The *Webb* court noted that seeking employment "suggests no more than that [the claimant] was doing his utmost, in spite of his health, to support himself." *Id.* Here, however, the ALJ did not simply cite to work activity as a basis for her determinations; rather, the ALJ cited to specific work activity to discredit specific assertions about Plaintiff's alleged disabilities. (Tr. 33–36). For example, although Plaintiff alleged "disabling pain," the ALJ noted that she continued to work up to 25 hours per week in a fast food restaurant. (Tr. 33). Such activity does not simply stand for the proposition that Plaintiff was doing her "utmost" to support herself but, rather, she is capable of working, albeit at a reduced level, over a period of time.[2] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding an ALJ's negative credibility finding based on the claimant's work activities and history).

Plaintiff finally appears to argue that the ALJ should have actually made a determination on SGA. (Doc. 22 at 2). In particular, Plaintiff argues that because she appealed "on the grounds she was *not* engaging in SGA," the ALJ should have made an explicit finding on SGA grounds rather than medical improvement grounds. (*Id.*). Plaintiff fails to cite—and the Court cannot find—any authority for this statement.

---

[2] Because the ALJ did not base her decision on a finding related to Plaintiff's SGA, Plaintiff's argument that the ALJ erred by failing to consider special considerations in analyzing Plaintiff's SGA, (Doc. 16 at 14–15), necessarily fails.

Plaintiff's medical improvement was a sufficient finding for the ALJ to base her decision on and a finding on SGA grounds would not have changed the outcome of the ALJ's decision. Overall, Plaintiff's arguments that the ALJ erred in considering—or not considering—SGA are without merit.

### C.    Determination of Medical Improvement

Plaintiff next argues that the ALJ found medical improvement without "specifically stat[ing] what substantial medical evidence supports her finding of a decrease in medical severity." (Doc. 16 at 16). Plaintiff further argues that the ALJ based her finding of medical improvement solely on Plaintiff's work activity. (Doc. 16 at 16–20).

At step three of a continuing disability review, an ALJ considers whether a claimant has experienced medical improvement. Medical improvement is "any decrease in the medical severity of [an] impairment." 20 C.F.R. § 404.1594(b)(1). This determination involves a comparison between the claimant's condition at the CPD and the claimant's present condition using "symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." *Id.*

Here, the ALJ referenced "the foregoing paragraphs" in finding that "medical evidence indicates that [Plaintiff's] impairments and symptoms of impairment had improved and were stable with appropriate medical treatment." (Tr. 32). Such findings led the ALJ to conclude "there had been a decrease in medical severity of the impairments present at the time of the CPD." (Tr. 32). The thrust of Plaintiff's argument is that the "foregoing paragraphs" referenced by the ALJ contain little medical evidence and findings. The Commissioner acknowledges that the ALJ may have misspoke in reference to the location of her specific findings and that these findings appear after the ALJ concludes medical improvement occurred. (Doc. 21 at 12 n.1). Indeed, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion [and may] draw inferences . . . if those inferences are there to be drawn." *Magallanes*, 881 F.2d at 755. Thus, the Court looks to the entirety of the ALJ's decision

in determining whether substantial evidence existed for the ALJ's conclusion.

The ALJ considered multiple pieces of medical evidence in finding that Plaintiff experienced medical improvement related to Plaintiff's condition at the CPD. (Tr. 32–39). At the CPD, Plaintiff's impairments were a right lower extremity gunshot wound and fracture. (Tr. 29). The ALJ summarized evidence in the record that reflected a decrease in the severity of these medical opinions as follows:

> At the time of the cessation disability review the medical evidence showed that [Plaintiff's] leg had healed following surgery and there was no evidence of any residual or new fracture. It was further found that [Plaintiff] was now able to ambulate without assistance and to perform normal daily activities independently. Review of the entire medical record demonstrated [Plaintiff's] condition had improved and had resulted in no more than minimal limitations in daily functioning.

(Tr. 32). Later in the decision, the ALJ supported this summary through discussions of specific medical evidence. For example, Dr. Joseph Ring observed that Plaintiff could do the following: lift and carry up to 25 pounds frequently and occasionally; stand and walk for four-to-five hours per eight-hour day; walk without a need for an assistive device; sit without restriction; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently stoop; and occasionally kneel, crouch, and crawl. (Tr. 35, 484–86). Dr. Colin Joseph noted the following: Plaintiff lived alone and was capable of performing all necessary daily activities by herself; Plaintiff hosted a weekly Bible study group meeting; Plaintiff shopped for groceries independently; and Plaintiff occasionally used an unprescribed cane. (Tr. 37, 527–29). Dr. Paul Bendheim reported the following about Plaintiff: normal gait; slight deformity in her right thigh; lack of tenderness to palpitation; ability to walk two miles at a time with medication and perform normal chores without limitation; and intermittent pain in right lower extremity. (Tr. 38, 589–94). Finally, physician assistant Robert C. McDonald, "in conjunction with Dr. [Paul] Pflueger," noted that Plaintiff was grossly neurologically intact with no focal deficits, had a full range of motion, and had a stable gait with no significant limp.[3] (Tr. 38, 596–99).

---

[3] Pursuant to the Social Security regulations, a physician assistant is not

- 12 -

The ALJ summarized the above-referenced objective medical evidence in finding that Plaintiff experienced medical improvement in relation to her condition at the CPD. (Tr. 32–39). Thus, Plaintiff is wrong in stating the "ALJ did not specifically state what substantial medical evidence supports her finding of a decrease in medical severity." (Doc. 16 at 16). This Court further declines Plaintiff's request to second-guess the ALJ's reasonable determination that objective evidence support a finding of medical improvement, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

### D.  Medical Testimony

Plaintiff argues the ALJ accorded too little weight to medical opinion evidence. (Doc. 16 at 20). Although Plaintiff broadly states that the ALJ "gave inappropriate weight to *all* medical opinion evidence," (*id.* (emphasis added)), Plaintiff only provides specific arguments regarding the opinions of Dr. Ring, Nurse Practitioner Peters, and Dr. Joseph, (*see* Docs. 16 at 20–24; 22 at 4–9).

### 1.  Weighing of Medical Source Evidence

Plaintiff first argues that the ALJ improperly weighed the medical opinions of Dr. Ring and Dr. Joseph by giving each opinion "minimal weight." (Tr. 35, 37).

### a.  Legal Standard

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Gallant*, 753 F.2d at 1454. To reject the uncontradicted opinion of an examining physician, the ALJ must provide "clear and convincing" reasons for rejecting

---

considered an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (2016). However, evidence from "other medical sources" such as physician assistants may be used "to show the severity of [a claimant's] impairment(s)." *Id.* § 404.1513(d).

the opinion. *Lester*, 81 F.3d at 830. If another doctor contradicts the opinion of an examining doctor, the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830–31.

### b.     Dr. Ring's Medical Opinion

Plaintiff argues that the ALJ erred in giving the opinions of examining physician, Dr. Ring, minimal weight. (Docs. 16 at 20–24; 22 at 4–7). The ALJ gave three bases for giving Dr. Ring's opinion minimal weight: (1) "the one-time nature of his exam"; (2) "the claimant was working at that time"; and (3) "the greater objective record otherwise supports the residual functional capacity as established, including the ability to stand and walk for at least six hours per eight hour day." (Tr. 35).

Dr. Ring examined Plaintiff in February 2012. (Tr. 484–89). He recognized that Plaintiff retained a full range of motion in all major joints of the upper and lower extremities and spine. (Tr. 485). Dr. Ring also observed that Plaintiff needed no assistive devices and had "+5/5 muscle strength testing in all major flexor and extensor muscle groups of the upper and lower extremities." (Tr. 485–86). Based on Plaintiff's right femur wound, Dr. Ring opined that Plaintiff could lift and carry 25 pounds frequently and occasionally, stand and walk for four to five hours per eight-hour day, walk without an assistive device, and sit without restriction. (Tr. 487–89).

The "one-time nature" of Dr. Ring's examination—without connection to contradicting evidence in the record—is an inappropriate basis for giving lesser weight to Dr. Ring's opinion. *See Lester*, 81 F.3d at 832 ("Finally, the ALJ noted that Dr. Taylor's conclusions were based on 'limited observation' of the claimant. While this would be a reason to give less weight to Dr. Taylor's opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." (citations omitted)). Indeed, the Commissioner appears to acknowledge this as an inappropriate basis. (*See* Doc. 21 at 21). However, not all of the ALJ's bases need be valid, as even the elimination of some of the ALJ's reasons does not invalidate the ALJ's entire opinion. *See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*,

533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions . . .' and the error 'does not negate the validity of the ALJ's ultimate . . . conclusion,' such is deemed harmless and does not warrant reversal." (quoting *Batson*, 359 F.3d at 1197)).  Thus, the Court will review the two other bases provided by the ALJ.

The ALJ properly discounted Dr. Ring's opinion based on the conflict between Plaintiff's work activities and Dr. Ring's opinion on Plaintiff's limitations. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding an ALJ's rejection of a physician's opinion regarding the plaintiff's limitations based, in part, on the plaintiff's reported activities of daily living). Between 2012 and 2012, Plaintiff held multiple jobs, including babysitter, housekeeper, fast food worker, and janitor. (Tr. 615–18). The ALJ's finding that specific work activities contradicted the opinion of Dr. Ring related to the length of time Plaintiff could walk or stand is not error.[4]

The ALJ further found Dr. Ring's exam results to be "probative and persuasive" but noted their inconsistency with the greater record. (Tr. 35). Among conflicting medical reports, the ALJ noted the findings of examining physician Dr. Bendheim. (Tr. 38). Dr. Bendheim opined that Plaintiff could walk normally with "intermittent pain" and no limitations. (Tr. 591–93). Although Dr. Bendheim recognized that Plaintiff "certainly has evidence of major surgery in her right lower extremity," he noted that her pain medicine allowed her to operate with mild-to-no limitations. (Tr. 593–94). Dr. Bendheim's opinion clearly contradicted Dr. Ring's opinion. (Tr. 38). The ALJ looked to Dr. Bendheim's opinion—among other evidence in the record, such as work activity—in resolving the conflict existing among the evidence in the record. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."). The ALJ provided specific and legitimate

_____

[4] Plaintiff repeats the assertion that the ALJ presumed SGA in giving less weight to Dr. Ring's medical opinion. (*See, e.g.*, Doc. 22 at 7). However, Plaintiff fails to cite any language in the ALJ's opinion and the Court cannot find any such presumption.

1 reasons for rejecting Dr. Ring's opinion and supported those reasons with substantial
2 evidence.

3 ### c. Dr. Joseph's Medical Opinion

4 Plaintiff argues that the ALJ erred in giving the opinions of examining physician,
5 Dr. Joseph, minimal weight. (Docs. 16 at 22–24; 22 at 7–9). The ALJ gave three bases
6 for giving Dr. Joseph's opinion minimal weight: (1) the opinion's inconsistency with
7 medical records; (2) the opinion's inconsistency with Plaintiff's daily and work activities;
8 and (3) the opinion's failure to specify work limitations.[5] (Tr. 37).

9 Dr. Joseph examined Plaintiff in June 2012. (Tr. 527). Dr. Joseph diagnosed
10 Plaintiff with PTSD and depression. (Tr. 529). Dr. Joseph opined that Plaintiff
11 experiences "ongoing depressive symptoms of moderate severity" as well as "PTSD
12 symptomatology although not sufficient to meet full criteria." (Tr. 529). Dr. Joseph
13 concluded that Plaintiff "remains emotionally vulnerable and is likely to respond to
14 increased stress with anxiety and feelings of self doubt; and this is likely to have some
15 affect (*sic*) on her ability to perform in the typical work setting." (Tr. 529).

16 The ALJ discounted Dr. Joseph's opinion based on its inconsistency with medical
17 records. (Tr. 37). As the Court previously noted, inconsistency with other medical
18 opinions is a valid basis to discount medical testimony. *See Andrews*, 53 F.3d at 1039.
19 Here, it is unclear what the ALJ relied upon in finding an inconsistency. The
20 Commissioner argues that the ALJ found an inconsistency between Dr. Joseph's opinion
21 and the opinion of Dr. Stephen Fair, who examined Plaintiff in June 2012. (Doc. 21
22 at 22 n.5). Dr. Fair opined that Plaintiff could "persevere and concentrate on simple,
23 routine work" despite being emotionally vulnerable. (Tr. 533, 546). However, the ALJ
24 failed to analyze Dr. Fair's opinion and only cited to it in passing when describing the

25 _____

26 [5] The ALJ provided a fourth basis in assessing Dr. Joseph's opinion: "the one-time
nature of his exam." (Tr. 37). The ALJ provided no greater connection to contradicting
27 evidence as she provided in giving the same basis for according less weight to Dr. Ring's
opinion. Thus, the Court rejects this basis for the same reasons it provided in assessing
28 the ALJ's bases for according less weight to Dr. Ring's opinion and analyzes the ALJ's
other three bases for discounting Dr. Joseph's opinion.

"opinions of the state agency's reviewing physicians regarding the claimant's residual functional capacity." (Tr. 38). The ALJ's mere conclusion that Dr. Joseph's opinion was inconsistent with the medical records was error. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."). However, because the ALJ gave two other reasons for discrediting Dr. Joseph's opinion, this error was harmless. *See Carmickle*, 533 F.3d at 1162.

The ALJ found Dr. Joseph's opinion that Plaintiff's "emotional vulnerability" interfered with her ability to work was inconsistent with Plaintiff's daily and work activities. (Tr. 37). A claimant's daily and work activities can constitute a reason to discredit a physician's opinion of the claimant's limitations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also Morgan.*, 169 F.3d at 600–02. The ALJ specifically referred to Plaintiff living alone and hosting weekly Bible study groups as being inconsistent with any medical findings that Plaintiff had significant mental limitations. (Tr. 37). The ALJ further recognized that Plaintiff never claimed difficulty in working due to stress or anxiety. (Tr. 37). Such activities could plausibly be read as inconsistent with Dr. Joseph's assessment of Plaintiff's psychological impairments.[6]

Finally, the ALJ discounted Dr. Joseph's opinion because it was "vague and imprecise" and failed to set forth specific work limitations. (Tr. 37). The ALJ specifically noted that Dr. Joseph used terms like "likely to" in characterizing his opinion. (Tr. 37). An ALJ may reject vague and conclusory physician opinions. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *see also Magallanes*, 881 F.2d at 751. Dr. Joseph's opinions were largely conclusory, noting that Plaintiff's emotional vulnerability was "likely to" have "some [e]ffect" on an ability to perform in a work setting. (Tr. 529).

---

[6] Plaintiff reiterates that "the ALJ's primary reason to reject Dr. Joseph's opinion is her erroneous belief that [Plaintiff] was engaging in SGA." (Doc. 16 at 23). Plaintiff again fails to cite any language in the ALJ's opinion and the Court cannot find any such belief by the ALJ.

Such a vague opinion is too conclusory to be helpful. The ALJ did appear to credit Dr. Joseph's underlying examination findings in determining that Plaintiff had "mild limitations in mental functioning." (Tr. 37). In giving Dr. Joseph's opinion minimal weight and relying on the examination findings, the ALJ did not err in reaching her conclusion.

### 2. Weighing of Other Source Evidence

Plaintiff next argues that the ALJ improperly weighed the opinions of her treating nurse practitioner, Ms. Peters, by giving her opinions "minimal weight." (Tr. 36).

### a. Legal Standard

The Social Security Regulations differentiate between "acceptable" medical sources, such as licensed physicians, licensed or certified psychologists, and licensed optometrists, and "other" sources, which include nurse practitioners and physician assistants. *See* 20 C.F.R. § 404.1513; SSR 06-03p, 2006 SSR LEXIS 5.[7] An ALJ can use "other" medical source opinions in determining the "severity of [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p, 2006 SSR LEXIS 5.

An ALJ may discount an "other" medical source if the ALJ provides "germane" reasons. *Ghanim*, 763 F.3d at 1161; *Molina*, 674 F.3d at 1114. The Ninth Circuit has found it sufficient if the "ALJ at least noted arguably germane reasons for dismissing ["other" medical source] testimony, even if [s]he did not clearly link [her] determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Germane reasons will only be legally sufficient, however, if they are supported by substantial evidence in the record. *See, e.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

---

[7] The Social Security Administration has recently amended the Social Security Regulations so that, among other amendments, advanced practice registered nurses and physician assistants are considered acceptable medical sources for claims brought after March 27, 2017. *See* 20 C.F.R. § 404.1502(a) (2017). Because Plaintiff filed her claim before this date, the amended version of the Social Security Regulations does not apply here.

### b.    Ms. Peters's Opinion

Plaintiff argues that the ALJ erred in giving the opinions of treating nurse practitioner, Ms. Peters, minimal weight. (Docs. 16 at 20–22; 22 at 9). The ALJ gave four bases for giving Ms. Peters's opinion minimal weight: (1) Ms. Peters was not an acceptable medical source; (2) the opinion was contradicted by Dr. Ring's findings; (3) the opinion was contradicted by Plaintiff's ongoing work activity; and (4) the opinion was contradicted by Ms. Peters's own clinical findings. (Tr. 36).

Ms. Peters treated Plaintiff numerous times in 2011 and 2012. (*See* Tr. 412–14, 419–73, 510–26). In February 2012, Ms. Peters completed a check-box form, assessing Plaintiff with several physical limitations, including the inability to carry five pounds, an inability to drive automobiles, and a "severe" inability to function due to pain and fatigue. (*See* Tr. 412–14). Ms. Peters further opined that Plaintiff was unable to sustain sedentary work activity and could not stand or walk more than 15 minutes a time. (Tr. 412–14).

The ALJ's first two bases for rejecting Ms. Peters's medical opinion—that Ms. Peters was not an acceptable medical source and Ms. Peters's opinion was contradicted by an opinion that the ALJ also gave minimal weight—are insufficient by themselves to constitute substantial evidence. Although considering the source of an opinion is a relevant factor when assessing the opinion's weight in relation to the other opinions in the record, the source cannot be the only basis for giving an opinion lesser weight. *See* SSR 06-03p, 2006 SSR LEXIS 5. It is also unclear—and the Commissioner does not attempt to provide an argument—how an opinion that was given "minimal weight" could justify giving a second opinion "minimal weight" because the opinions contradict with one another.

With respect to the ALJ's third basis, Plaintiff's ongoing work activity is a germane reason to discount Ms. Peters's opinion for the same reason the Court discussed in reference to the ALJ's discount of Dr. Ring and Dr. Joseph's medical opinions. Plaintiff's work and daily activities are even more compelling bases for rejection of Ms.

Peters's opinion because, unlike Dr. Ring and Dr. Joseph's medical opinions, Ms. Peters's opinion largely concluded Plaintiff had a *complete* inability to work in any setting.

The ALJ's final basis, that Ms. Peters's opinion was conclusory and unsupported by Ms. Peters's clinical findings, is adequate for rejecting Ms. Peters's opinion. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Here, the ALJ noted that Ms. Peters "merely checked boxes on a form" without elaboration. (Tr. 36). The ALJ further juxtaposed the ALJ's unremarkable objective findings from earlier exams against the extreme limitations recommended in Ms. Peters's checkbox form. (Tr. 36). The ALJ further noted that many of Ms. Peters's recommended limitations had no basis in any of her findings. (Tr. 36). Such inconsistencies are substantial evidence that supports the minimal weight the ALJ gave to Ms. Peters's medical opinion.

### E. Plaintiff's Credibility

Plaintiff next challenges the ALJ's adverse credibility finding regarding Plaintiff's symptom severity testimony. (Doc. 16 at 26–28). There is a two-step process for evaluating a claimant' testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). It is "not sufficient for the ALJ to make only general findings; [s]he must state which pain testimony is not credible and what evidence

suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Plaintiff testified that it is not easy for her to work because she is "always hurting." (Tr. 615). Plaintiff testified that she must "rest[] every three hours" because of "the condition in [her] leg." (Tr. 615). Plaintiff also testified that she always has "pain in [her] bones" and suffers from other conditions, such as diabetes, fibromyalgia, osteoarthritis, and COPD. (Tr. 615). However, she "tr[ies] to work as much as [she] can to be able to provide for [her]self." (Tr. 615–16).

At step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 33). Proceeding to step two, however, the ALJ rejected Plaintiff's testimony by noting the following: (1) Plaintiff's work and daily activities are inconsistent with her allegations of functional limitations, (Tr. 33, 34); (2) Plaintiff's pain and impairments were effectively controlled with medication, (Tr. 33–34); and (3) the objective evidence in the record was inconsistent with Plaintiff's allegations, (Tr. 34).[8]

### 1.    Inconsistency with Reported Daily and Work Activities

The ALJ first found that Plaintiff's part-time work activity and ability to perform activities of daily living independently contradicted her allegations that her right leg

---

[8] Plaintiff states that the ALJ "does not reference what reasons support her conclusion that [Plaintiff] is not credible." (Doc. 16 at 26). However, Plaintiff appears to concede the ALJ referenced reasons by analyzing and arguing against many of the bases the ALJ provided for finding Plaintiff not entirely credible. (*Id.* at 26–28).

condition causes "disabling pain, fatigue, and functional limitations." (Tr. 33). Work and daily activities are valid factors for an ALJ to consider in assessing a claimant's credibility. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (citations omitted)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (recognizing that contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony). Further, daily activities may be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, the ALJ found it inconsistent that Plaintiff did not feel like she could work but had been working up to 25 hours per week in a fast food restaurant. (Tr. 33). The ALJ also recognized that Plaintiff completed all activities of daily living—such as driving a car, caring for others, and shopping—independently. (Tr. 34; *see also* Tr. 39). Such activities are directly transferrable to the work environment. The ALJ's findings concerning Plaintiff's activities are backed by substantial evidence in the record. Given the multitude and type of activities Plaintiff admitted to performing, the ALJ rationally found that Plaintiff's activities undermined her allegations of severe physical limitations impeding her ability to perform any work. Such findings are entitled to deference as they are fully supported by substantial evidence in the record. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 2. Control of Symptom Severity with Pain Medication

The ALJ next found that the medications Plaintiff was taking had been relatively effective in controlling her symptoms in contrast to Plaintiff's testimony. (Tr. 33–34). In particular the ALJ cited to portions of the medical record in which Plaintiff reported "70% [pain] relief on current pain regimen and this is working well," (Tr. 467), and that

her pain is "'fairly well controlled' with current medications," (Tr. 583). An ALJ may consider the types and effectiveness of Plaintiff's treatment and medications in assessing Plaintiff's credibility. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) ("[T]he ALJ reasonably noted that the underlying complaints upon which [the claimant's] reports of pain were predicated had come under control."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv) ("The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" are relevant to the evaluation of a claimant's alleged symptoms.).

Here, Plaintiff's testimony of debilitating pain was contradicted by her reports of effective control of such pain by medication. The ALJ's findings are supported by substantial evidence, and this provides a specific, clear and convincing reason to discount Plaintiff's subjective allegations. *See Molina*, 674 F.3d at 1111 (stating ALJ's findings must be upheld if based on inferences reasonably drawn from the record).

### 3. Inconsistency with Medical Record

Finally, the ALJ found that Plaintiff's allegations of disabling pain, fatigue, and functional limitations were unsupported by the objective evidence in the medical record. (Tr. 33–34). Contradiction with the medical record is a relevant basis for discounting a claimant's credibility. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective . . . testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's symptoms and their disabling effects." (citing 20 C.F.R. § 404.1529(c)(2))).

Here, the ALJ cited multiple contradictions between Plaintiff's testimony and the medical record. For example, Plaintiff testified about frequent pain in her leg but, as the ALJ found, the medical record often revealed normal muscle bulk and tone and intact muscle strength in the upper and lower extremities. (Tr. 35, 486). Additionally, Plaintiff exhibited a "full range of motion" in her legs and could squat with only some pain. (Tr. 35, 485). Plaintiff's gait was "normal" and she was able to squat, fully flex in a

standing position, and perform a toe, heel, and tandem walk. (Tr. 38, 592). Additionally, a clinician found only a "slight deformity" on Plaintiff's right thigh but reported normal muscle tone, intact strength, and no evidence of atrophy. (Tr. 38, 593). Plaintiff argues that these findings were not directly attributed to the ALJ's discussion of Plaintiff's credibility, which broadly stated an inconsistency with the "greater objective record." (Doc. 16 at 26; *see also* Tr. 33, 34). However, Plaintiff has cited no case which requires the ALJ to exhaustively restate her findings multiple times in an opinion. *See Scotellaro v. Colvin*, No. 2:13-cv-00696-GMN-PAL, 2015 WL 4275970, at *9 (D. Nev. June 22, 2015) ("An ALJ is required to discuss and evaluate evidence that supports his conclusion; he is not required to do so under any specific heading." (citing *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013))). The ALJ cited many benign medical findings throughout her opinion. These findings support the ALJ's overarching finding that the severity of Plaintiff's subjective symptoms is inconsistent with the clinical evidence.

Many of Plaintiff's arguments against the ALJ's interpretation take the ALJ's findings out of context. For example, Plaintiff argues the ALJ could not have found Plaintiff spoke English well at the hearing because she used a translator. (Doc. 16 at 27). However, the ALJ cited Plaintiff's own testimony at the hearing that indicated she "underst[oo]d everything" but could not "speak everything completely." (Tr. 615). Plaintiff elaborated that she used an interpreter in her hearing to be "respectful" to the ALJ. (Tr. 615). The ALJ further cited at least one consultative exam where an interpreter—Plaintiff's son—was present but the doctor noted that Plaintiff "could speak good enough English to where I did not need to use [the translator] very often." (Tr. 484). The Court cannot find the level of mischaracterization in the ALJ's opinion that Plaintiff alleges. Much of Plaintiff's other arguments rely on opinions and characterizations found within the medical record that reach different conclusions than the ALJ. (*See, e.g.*, Doc. 16 at 27 (citing Dr. Joseph's opinion that Plaintiff suffered from significant mental limitations)). Even if the objective medical evidence could support Plaintiff's

interpretation, the ALJ's determination is reasonable and must be upheld. *Batson*, 359 F.3d at 1193.

Considering the record as a whole, the inconsistencies between Plaintiff's testimony and her daily and work activities, Plaintiff's statements regarding the effectiveness of pain medication, and the objective evidence in the medical record constitute clear and convincing reasons to discredit her credibility.

## F. Due Process

Plaintiff finally argues that the ALJ violated her procedural due process rights by misleading Plaintiff at various times during the hearing and "presuming" that Plaintiff was working at SGA levels. (Docs. 16 at 24–26; 22 at 9–11).

A social security claimant has a right to due process. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Furthermore, an "ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288). However, this duty to develop is triggered only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

Plaintiff's claims stem from various statements made by the ALJ in response to Plaintiff's questions at the hearing. After the ALJ cautioned Plaintiff about her lack of legal representation and offered a postponement of the hearing so that Plaintiff could obtain representation, Plaintiff asked if she could have a legal representative at a later hearing. (Tr. 612). The ALJ responded, "You can hire a lawyer to appeal it to the Appeals Council, but you won't get another hearing unless the Appeals Council remands it, and that will take a couple of years." (Tr. 612). Just before she waived her right to counsel, Plaintiff asked the ALJ whether "the case is only for me to be able to have my benefits again, correct?" (Tr. 613). The ALJ answered Plaintiff's question in the affirmative. (Tr. 613).

Later in the hearing, the ALJ asked about Plaintiff's recent medical treatment

history and whether Plaintiff had records of such treatment:

> [The ALJ]:    So I'm going to have to have them send you a form that I can order updated medical records.
>
> [Plaintiff]:    A lot of my records are with the lawyer I had who withdrew out of my case, and she has a lot of those records. Is there any way they can be collected from her? I don't know what to do in regards to that. She had all my records.
>
> [The ALJ]:    Well, you can call her up and ask her to have the records available for you.
>
> [Plaintiff]:    I will bring whatever you need me to bring, but I have called my lawyer many times, and I never get through [to] her. I have left messages so that I could have the information to bring with me today. I never received anything, and so I just came whatever I had, but –
>
> [The ALJ]:    Okay. Well, I have everything she has, and I don't have updated records, but you have –
>
> [Plaintiff]:    I will get the updated records so that you can have them.
>
> [The ALJ]:    Okay. We will also try and order them.

(Tr. 618–19).

Plaintiff argues the ALJ misrepresented facts and supplied incorrect legal advice that violated Plaintiff's due process rights. For example, Plaintiff cites statistics about the average appeal processing time, noting that the average processing time is over a year but below two years and inferring that the ALJ's estimate of "a couple of years" was erroneous. (Doc. 16 at 24). Based on the record, the relevance of the ALJ's allegedly erroneous estimate is unclear. Nevertheless, even if the estimate was relevant to Plaintiff's decision to waive her right to counsel, Plaintiff supplies the wrong statistic to the Court. The ALJ referenced the amount of time before Plaintiff would have another hearing *following* a remand from the Appeals Council. This amount of time is likely much closer to "a couple of years," and Plaintiff fails to provide the Court with the relevant statistical data for this metric. Thus, the ALJ did not violate Plaintiff's due process rights in providing her estimate.

Plaintiff also argues that the ALJ misstated the nature of the appeal in violation of

Plaintiff's due process rights. (Doc. 16 at 24–25). Plaintiff argues that the ALJ should not have agreed with Plaintiff after Plaintiff asked if "the case is only for me to be able to have my benefits again, correct?" (Tr. 613; Doc. 16 at 24). Particularly, citing to a "Request for Reconsideration," (Tr. 282), Plaintiff states that the ALJ was incorrect because Plaintiff "filed her continuing disability review appeal requesting her disability benefits be continued as of the date of termination as she remains disabled, not the restoration of benefits under the expedited review process." (Doc. 16 at 24–25). Plaintiff's argument directly contradicts Plaintiff's position that Plaintiff "appealed *both* the continuing disability review process and expedited reinstatement denial." (Doc. 16 at 9 (emphasis added)). Further, as the Court discussed earlier in this Order, the ALJ's confirmation was likely a correct characterization of the appeal. *See supra* Section III.A. As a result, Plaintiff fails to articulate how the ALJ's agreement with Plaintiff violated Plaintiff's due process rights.

Next, Plaintiff argues that the ALJ violated Plaintiff's due process rights by promising, and failing, to obtain Plaintiff's records. (Doc. 16 at 25). Plaintiff misstates the record. The Court cannot find any "promises" made by the ALJ during Plaintiff's hearing. At most, the ALJ told Plaintiff she would "try and order" the updated records. (Tr. 619). Plaintiff has not argued that the ALJ did not *try* to order updated records. Further, Plaintiff did not appear to rely on any such promise as she stated she would obtain the updated records herself. (Tr. 619).

Finally, Plaintiff appears to repeat the argument that the ALJ erroneously presumed SGA. (Doc. 22 at 10). Plaintiff again fails to cite any language in the ALJ's opinion regarding presumed SGA, and the Court cannot find any such presumption by the ALJ. Accordingly, the Court finds that the ALJ did not violate Plaintiff's due process rights.

///

///

///

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** striking pages 4–5 from Plaintiff's opening brief, (Doc. 16 at 4–5) and page 12 from Plaintiff's reply brief, (Doc. 22 at 12), for the reasons stated above.

**IT IS FURTHER ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk of the Court shall enter judgment accordingly.[9]

Dated this 22nd day of May, 2017.

James A. Teilborg
Senior United States District Judge

---

[9] To the extent a mandate is required, the judgment shall serve as the mandate.